UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

BRYON WINKELMAN,

        Plaintiff,

v.

NANCY A. BERRYHILL,
Commissioner of Social Security,

        Defendant.

CAUSE NO. 3:18-CV-933 DRL

OPINION AND ORDER

Plaintiff Bryon Winkelman seeks judicial review of the Social Security Administration's decision denying his application for disability and disability insurance benefits under Title II of the Social Security Act. *See* 42 U.S.C. § 423(a). Mr. Winkelman requests remand of his claim for further consideration. Having reviewed the underlying record and the parties' arguments, the court affirms the decision and denies remand.

BACKGROUND

On May 9, 2014, Mr. Winkelman filed an application for Social Security disability insurance benefits, alleging a disability onset date of November 4, 2013. R. 13. These claims were initially denied on September 11, 2014 and upon reconsideration on October 27, 2014. *Id.* On August 16, 2017, a hearing was held before Administrative Law Judge Romona Scales. *Id.* On November 27, 2017, the ALJ entered a decision denying Mr. Winkelman benefits. *Id.* at 10. Mr. Winkelman challenged the ALJ's decision by timely filing a request for review of hearing decision with the Appeals Council. *Id.* at 1. The Appeals Council denied review on September 12, 2018. *Id.* Because the Appeals Council denied review of the ALJ's unfavorable decision, that ALJ decision is the final decision of the agency. *See* 20 C.F.R. § 404.981.

Thereafter, Mr. Winkelman timely filed his complaint to this court. Mr. Winkelman also filed an opening brief. The Social Security Commission timely filed a response, and Mr. Winkelman then replied. The issues are fully ripe for decision.

STANDARD

The court has authority to review the ALJ's decision under 42 U.S.C. § 405(g); however, review is bound by a strict standard. Because the Council denied review, the court evaluates the ALJ's decision as the Commissioner's final word. *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). The ALJ's findings, if supported by substantial evidence, are conclusive and nonreviewable. *See Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is such evidence that "a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and may well be less than a preponderance of the evidence, *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citing *Richardson*, 402 U.S. at 401). If the ALJ has relied on reasonable evidence and built an "accurate and logical bridge between the evidence and her conclusion," the decision must stand. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). Even if "reasonable minds could differ" concerning the ALJ's decision, the court must affirm if the decision has adequate support. *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

DISCUSSION

When considering a claimant's eligibility for disability benefits, an ALJ must apply the standard five-step analysis: (1) is the claimant currently employed; (2) is the claimant's impairment or combination of impairments severe; (3) do her impairments meet or exceed any of the specific impairments listed that the Secretary acknowledges to be so severe as to be conclusively disabling; (4) if the impairment has not been listed by the Secretary as conclusively disabling, given the claimant's residual functional capacity, is the claimant unable to perform her former occupation; (5) is the claimant unable to perform any other work in the national economy given her age, education and

work experience. 20 C.F.R. § 404.1520; *Young v. Secretary of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). The claimant bears the burden of proof until step five, where the burden shifts to the Commissioner to prove that the claimant can perform other work in the economy. *See id.*

Here, the ALJ found that Mr. Winkelman satisfied step one by not being currently employed in substantial gainful activity. R. 15. The ALJ then found that Mr. Winkelman satisfied step two because he had several severe impairments, including degenerative disc disease of the cervical and lumbar spine, residuals from spinal surgery to the cervical spine and lumbar spine, osteoarthritis to the left shoulder, and vestibular dysfunction. *Id.* Next, the ALJ found that Mr. Winkleman's impairments did not meet or exceed any of the specific impairments listed that are so severe as to be conclusively disabling. *Id.* at 18. The ALJ then proceeded to formulate the following residual functional capacity (RFC):

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with exceptions. Specifically, the claimant is able to lift and/or carry 20 pounds occasionally and up to 10 pounds frequently, stand and/or walk 4 hours in an 8-hour workday and sit about 6 hours in an 8-hour workday. He is never to climb ladders, ropes, or scaffolds, but is occasionally able to climb ramps and stairs, and balance, stoop, kneel, crouch, and crawl. The claimant is occasionally able to reach overhead with his left upper extremity and push and pull with his upper and lower extremities. He is occasionally able to use foot controls, avoid even moderate exposure to extreme temperatures and vibrations. Last, he is to have no exposure to hazards.

*Id.* at 19. At step four, the ALJ determined, based on her RFC findings, that Mr. Winkelman was unable to continue performance of his past relevant work as an electrician (DOT 828.261-010). *Id.* at 25. At step five, however, the ALJ found that considering Mr. Winkelman's age, education, work experience, and RFC, there are jobs that exist in the national economy that he can perform. *Id.* at 26. Specifically, the ALJ found Mr. Winkelman capable of performing the requirements of a marker (DOT 209.587-034), an information clerk (DOT 237.367-010), and a mail clerk (209.687-026). *Id.* Because of her determination at step five, the ALJ denied Mr. Winkelman benefits.

Mr. Winkelman avers that the ALJ made two errors in determining the RFC: (1) that the ALJ failed to include a limitation in the RFC stating that Mr. Winkelman is unable to stoop completely, and (2) that the ALJ did not properly evaluate the opinion of Susanne Patrick-MacKinnon, M.D.

  A.  *The ALJ Properly Addressed Mr. Winkelman's Ability to Stoop in His RFC.*

An ALJ's RFC and hypothetical questions posed to the vocational expert must incorporate all of the claimant's limitations supported by the medical record. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015) (quoting *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014)). That said, an RFC is a measure of what an individual can do despite the limitations imposed by his impairments. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). The determination of an RFC is a legal decision rather than a medical one. *See Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995). An RFC "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing' basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 LEXIS 5, at 1 (July 2, 1996).

At a July 11, 2014 consultative examination, R. Gupta, M.D., found that Mr. Winkelman's lumbar flexion was limited to 60 degrees (as opposed to a normal 90 degrees). ECF 7 at 1057. Dr. Gupta went on to write that Mr. Winkelman was "unable to stoop or squat completely." *Id.* at 1056. The ALJ noted Dr. Gupta's findings in her opinion. *Id.* at 28. In her RFC determination, the ALJ limited Mr. Winkelman to occasional stooping. *Id.* at 25. Mr. Winkelman argues that this limitation only accounts for the frequency of stooping, not the degree to which Mr. Winkelman can stoop.[1]

This circuit has addressed similar factual inconsistencies before. In *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003), the court found an ALJ erred by not addressing the potentially conflicting assessments concerning the claimants bending ability (one doctor finding lumbar flexion of 40 degrees and another reporting that the claimant could "stoop occasionally"). *See also Thomas v.*

---

[1] To stoop means to bend the spine alone. SSR 85-15, 1985 SSR LEXIS 20, at 5 (Jan. 1, 1985).

*Colvin*, 534 F. Appx. 546, 551 (7th Cir. 2013) (finding the ALJ failed to resolve inconsistency between reports stating claimant had lumbar flexion of only 50 degrees and yet RFC stated claimant could occasionally stoop). In contrast, in *Mueller v. Colvin*, 524 F. Appx. 282, 286 (7th Cir. 2013), this circuit found that the inconsistency between a lumbar flexion of only 50 degrees and an RFC determination of occasional stooping could be cured by the ALJ relying on a report that explicitly considered medical evidence of the reduced bending capacity.

Based on these cases, courts have routinely found that an ALJ need not resolve any conflict where she relies on the opinion evidence of record, which in turn relied on or acknowledged a finding of limited stooping capacity. *See, e.g., Vincent A. v. Berryhill*, No. 16 C 7136, 2019 U.S. Dist. LEXIS 80484, at 16-18 (N.D. Ill. May 13, 2019); *Carrasco v. Berryhill*, No. 2:18-CV-31-JEM, 2019 U.S. Dist. LEXIS 39012, at 18-19 (N.D. Ind. Mar. 12, 2019) (Martin, J.) (remand not required where medical consultant who found that claimant could frequently stoop specifically considered an earlier opinion finding limited flexion); *Brady v. Berryhill*, No. 2:16-CV-523-PRC, 2018 U.S. Dist. LEXIS 35871, at 30-31 (N.D. Ind. Mar. 6, 2018) (Cherry, J.) (finding the ALJ did not err because she relied on the opinion evidence of record, which in turn relied on prior examinations finding a limited lumbar flexion); *cf. Luckett v. Berryhill*, No. 2:16-CV-223-PRC, 2017 U.S. Dist. LEXIS 154051, at 21-22 (N.D. Ind. Sept. 21, 2017) (Cherry, J.) (not apparent whether consultative examiners considered the medical records containing the flexion measurements, but nonetheless finding harmless error for other reasons).

In this case, the ALJ reviewed and acknowledged Dr. Gupta's July 11, 2014 consultative examination, noting Dr. Gupta's finding that Mr. Winkelman could not "stoop and squat completely." R. 16. The ALJ then went on to assign great weight to the findings of the state medical consultants, Drs. Sand and Corcoran. *Id.* at 25. Both state consultants listed Dr. Gupta's July 11, 2014 opinion as one they reviewed when making their findings and noted his findings as evidence of their conclusions. *Id.* at 107, 113, 119, 126. Despite Dr. Gupta's finding that Mr. Winkelman was unable to completely

5

stoop, Drs. Sand and Corcoran found that Mr. Winkelman was capable of occasional stooping throughout an average workday. *Id.* at 113, 126.

Mr. Winkelman argues that the *Mueller* case is inapplicable because he is not asking for the ALJ to resolve any conflict between Dr. Gupta's July 11, 2014 finding and the state consultants' opinions. Instead, he argues that the ALJ should have included two separate limitations within the RFC—one regarding degree of stooping and the other regarding frequency of stooping. While Mr. Winkelman argues that he is not asking for the ALJ to resolve a conflict, this appears to be a matter of semantics. Mr. Winkelman's recommended action upon remand—two separate stooping limitations in the RFC—is intended to remedy what he considers an inconsistency (*i.e.*, a conflict) between the two medical opinions. There is no need for the ALJ to make two separate findings when she has relied on the medical opinions of two state consultants who have in turn relied on the July 11, 2014 findings of Dr. Gupta. Accordingly, remand is not required on this issue because the ALJ's RFC and hypothetical questions to the vocational expert properly accounted for Mr. Winkelman's limited ability to stoop.

B. *The ALJ Properly Evaluated Dr. Patrick-MacKinnon's Opinion.*

After the August 16, 2017 supplemental hearing, the ALJ asked Dr. Patrick-MacKinnon to review Mr. Winkelman's records and assess his abilities and limitations. On October 2, 2017, Dr. Patrick-MacKinnon returned her analysis and found, among other things, that Mr. Winkelman can only occasionally reach in all directions with his left upper extremity. R. 1337. Dr. Patrick-MacKinnon noted Mr. Winkelman's untreated torn rotator cuff as supporting her conclusion. *Id.* Mr. Winkelman testified about his rotator cuff injury at the hearing, stating he experiences pain in his left shoulder that is only alleviated by medication that fatigues him. R. 20. Despite Dr. Patrick-MacKinnon's opinion that Mr. Winkelman should be limited to occasional reaching in all directions with his left upper

6

extremity, the ALJ found that Mr. Winkelman was limited to occasional overhead reaching with his left upper extremity. *Id.* at 25.[2]

In her opinion, the ALJ found there was no evidence supporting Dr. Patrick-MacKinnon's findings regarding Mr. Winkelman's upper right extremity and held that frequent manipulative limitations were not warranted.[3] The ALJ then went on to address Mr. Winkelman's upper left extremity, stating: "The only manipulative limitations that are warranted related to his left shoulder as it relates to overhead reaching, which he admits he is able to do. Therefore, the undersigned limits him to occasional overhead reaching." R. 25.

Because the ALJ did not impose a limitation of occasional reaching in all directions, the ALJ was able to find that Mr. Winkelman could perform the following jobs: marker (DOT 209.587-034); information clerk (DOT 237.367-010); and mail clerk (DOT 209.687-026). R. 26. All three of these jobs require frequent reaching. U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Dictionary of Occupational Titles* 98, 336, 343 (4th rev. ed. 1993). At the supplemental hearing, the ALJ heard testimony from the vocational expert in response to hypotheticals that included additional limitations (relating to mental limitations not ultimately adopted in the RFC). The VE listed four other jobs that require frequent reaching. R. 99-100; *Selected Characteristics of Occupations* at 308, 335, 336, 341.

An ALJ is required to consider all medical opinions in the record. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing 20 C.F.R. § 404.1527(b), (c)). Although an ALJ is not required to

---

[2] In her opinion, the ALJ said that Dr. Patrick-MacKinnon found the claimant is able to use his "hands frequently for manipulative tasks, except that he is limited to occasional *lifting* with his left upper extremity." R. 24 (emphasis added). The parties agree that the ALJ likely intended to write that Dr. Patrick-MacKinnon found Mr. Winkelman limited to occasional reaching, not lifting. ECF 12 at 5; ECF 11 at 8. Mr. Winkelman's arguments are not based on this statement of Dr. Patrick-MacKinnon's findings, and indeed are based on the understanding that the ALJ meant reaching.

[3] Mr. Winkelman is not contesting the ALJ's determination that manipulative limitations are not warranted as to his right extremities. ECF 12 at 6 ("Winkelman's use of his *right* upper extremities has not been, and is not now, an issue.") (emphasis in original).

address in writing every piece of evidence of testimony presented, she is required to provide an "accurate and logical bridge" as to why she finds a medical opinion lacking. *Id.* (citing *Craft v. Astrue*, 539 F.3d 669, 673 (7th Cir. 2008)).

The ALJ found Dr. Patrick-MacKinnon's findings to be of "great weight" to the extent they were consistent with the RFC "for the reasons stated above." R. 24. While the ALJ did not reiterate in that part of her order what those reasons were, though that might be best practice to ensure the order is explicit for review, she had earlier pointed to other evidence regarding Mr. Winkelman's range of motion. *See* R. 22 (stating the July 2014 and June 2015 examinations both showed full range of motion and normal strength). Furthermore, the ALJ heard testimony from Mr. Winkelman that he could reach out in front with both arms. R. 95.

In short, the record contained substantial evidence for the ALJ's conclusion, *see Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (courts look to the entire administrative record when reviewing for substantial evidence), and her reference to the RFC and "reasons stated" are enough to build a logical bridge, *see Tracie H. v. Saul*, 388 F. Supp. 3d 990, 994 (N.D. Ill. 2019) (citing *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015)) (a logical bridge is one that allows a reviewing court to trace the path of the ALJ's reasoning). Even if "reasonable minds could differ" concerning the ALJ's decision, the court must affirm if the decision has adequate support. *Simila*, 573 F.3d at 513. The ALJ's opinion shows that she considered the evidence of record, including Dr. Partick-MacKinnon's analysis, and found that a limitation of occasional reaching in all directions not warranted.

Because the ALJ relied on substantial evidence and built a logical bridge, remand is not required, and the court must affirm the decision. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014).

## CONCLUSION

The court finds that the ALJ was not required to resolve any apparent conflict in Mr. Winkelman's stooping limitation; further, the ALJ connected the evidence to her conclusion as to why

8

she did not agree with Dr. Patrick-MacKinnon's assessment that Mr. Winkelman is limited to occasional reaching in all directions. Because the ALJ built an accurate and logical bridge between the evidence and her conclusion the court DENIES Mr. Winkelman's request for remand and AFFIRMS the Commissioner's decision.

SO ORDERED.

February 21, 2020                                                      *s/ Damon R. Leichty*
                                                                       Judge, United States District Court